UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| DAVID A. BOLDT, | ) | CAUSE NO. 3:14-cv-00680-CAN |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CAROLYN COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

On April 2, 2014, Plaintiff David A. Boldt ("Boldt") filed a complaint in this Court

seeking reversal of the Social Security Commissioner's final decision to deny his application for

Disability Insurance Benefits ("DIB").  Alternatively, Boldt seeks a remand for further

consideration of his application.  On September 8, 2014, Boldt filed his Opening Brief of

Plaintiff in Social Security Appeal.  On December 23, 2014, Defendant, Commissioner of Social

Security ("Commissioner"), filed a response asking the Court to affirm the decision denying

benefits.  On March 13, 2015, Boldt filed a Reply Brief.  This Court may enter a ruling in this

matter based on the parties consent, 28 U.S.C. § 636(c), and 42 U.S.C. § 405(g).

**I.     PROCEDURE**

On November 30, 2010, Boldt filed a Title II application for DIB with the Social Security

Administration ("SSA") alleging disability beginning October 29, 2010.  The SSA denied

Boldt's application initially on August 8, 2011, and then again on November 21, 2011, after

reconsideration was granted.  On January 10, 2012, Boldt filed a timely request for an

administrative hearing.  On November 1, 2012, a video hearing was held before an

administrative law judge ("ALJ") where Boldt and an impartial expert appeared and testified.

On January 25, 2013, the ALJ issued his decision finding that Boldt was not disabled at Step

Four of the evaluation process and denying his applications for benefits.[1] On January 28, 2014,

the Appeals Council denied Boldt's request for review, making the ALJ's decision the final

decision of the Commissioner. Boldt then sought judicial review of the Commissioner's final

decision pursuant to sentence four of 42 U.S.C. § 405(g) by filing his complaint in this Court on

April 2, 2014.

## II.     RELEVANT BACKGROUND

Boldt was born on October 12, 1960, making him 50-years old on the alleged disability

onset date of October 29, 2010. Boldt has a high school education. Prior to the alleged onset

date, Boldt's past relevant work consisted of sales at a specialty bedding company. As part of

the sales job, Boldt would participate in the loading and unloading of trucks.

At his hearing before the ALJ, Boldt testified that he suffers from blindness in his right

eye and a sensitivity to light in his left eye that causes headaches. Boldt testified that the

headaches are so severe that sometimes he has to go to a dark room and lay down for a while,

and other times he has to lay there all day. Boldt also testified that despite his condition, he takes

no prescription medicine.

Boldt provided the ALJ with medical evidence that documented his visits to various

doctors from October 29, 2010, up to the date of the administrative hearing on November 1,

2012. Following the hearing, Boldt continued to seek medical treatment and continued to

provide medical evidence to the ALJ through January 19, 2013, six days before the ALJ issued

his decision. The medical record and opinions show that Boldt has been treated for blindness in

---

[1] Social Security regulations provide a five-part test to determine whether the claimant is disabled and entitled to Title II disability insurance benefits. *See* 20 C.F.R. § 404.1520(a)(4).

the right eye that developed after a severe trauma in 2010, resulting deficiencies in depth perception, photophobia, and headaches. Boldt also wears glasses to assist the visual acuity in his left eye and has self-treated with a varying regimen of over-the-counter pain medications throughout the relevant period.

In August 2011, Boldt was seen for a consultative examination by Advanced Ophthalmology Associates ("AOA"). The AOA doctor found that Boldt had normal visual fields, his condition was non-severe, and he could see to work with the corrected vision in his left eye. Later, in August 2011 and November 2011, two other non-examining state agency doctors affirmed that Boldt's condition was non-severe. After the hearing, the ALJ sent medical interrogatories to ophthalmologist Dr. Jack Greenberg seeking his expert opinion on Boldt's limitations based on review of the written evidence in Boldt's record as of November 14, 2012, and an audio recording of Boldt's testimony at the hearing. Dr. Greenberg found that Boldt suffered from photophobia, headaches related to photophobia, and minor cataract changes in the left eye. Dr. Greenberg also opined that photophobia would not normally cause day-long headaches as Boldt was alleging, and recommended consultation with a neurologist.

On January 7, 2013, Boldt saw neurologist Paula Toth-Russell. Dr. Toth-Russell noted that a December 2012 MRI showed "a venous angioma in the left temporal lobe" that may be the source of Boldt's headaches. Doc. No. 9 at 187. Dr. Toth-Russell began treating Boldt's headaches with Magnesium.

On January 19, 2013, more than two months following the hearing, Boldt initiated a visit with optometrist[2] Dr. Matthew Bartlett. Dr. Bartlett found blindness in the right eye with a

---

[2] In his opening brief, Boldt refers to Dr. Bartlett as an ophthalmologist. Doc. No. 17 at 5. However, records of Boldt's visit to Dr. Bartlett identify him as "Matthew Bartlett, O.D." Doc. No. 9 at 190–91. Therefore, the Court refers to Dr. Bartlett as an optometrist based on the "doctor of optometry" notation on his professional documents.

limited visual field in Boldt's left eye, but also offered the opinion that a patient with Boldt's issues would be a liability in most work environments.

On January 25, 2013, the ALJ issued a written decision reflecting the following findings based on the five-step disability evaluation prescribed by the SSA's regulations. *See* 20 C.F.R. § 404.1520(a)(4); *see also Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). As an initial matter, the ALJ found Boldt was insured through June 30, 2012, and must establish disability on or before that date in order to be entitled to DIB benefits. At Step One, the ALJ found that Boldt had not engaged in substantial gainful activity from October 29, 2010, the alleged onset date until the date last insured of June 30, 2012. At Step Two, the ALJ found that Boldt had the following severe impairments: blindness in the right eye; contraction of visual field in the left eye; and headaches. At Step Three, the ALJ found that Boldt did not have an impairment or combination of impairments that met or medically equaled any Listing. The ALJ then determined that Boldt retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels except that he must avoid all exposure to dangerous moving machinery, to unprotected heights, and commercial driving. At Step Four, the ALJ found that Boldt was capable of performing past relevant work as a sales attendant because it did not require the performance of work-related activities precluded by Boldt's RFC. Based on these findings, the ALJ determined that Boldt had not been disabled at any time from October 29, 2010, the alleged onset date, through June 30, 2012, the date last insured.

III.    ANALYSIS

A.    **Standard of Review**

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported

by substantial evidence.  42 U.S.C. § 405(g).  Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard.  *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence is more than a mere scintilla but may be less than the weight of the evidence.  *Sheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004).  Thus, substantial evidence is simply "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Kepple v. Massanari*, 468 F.3d 513, 516 (7th Cir. 2001).

A reviewing court is not to substitute its own opinion for that of the ALJ or to re-weigh the evidence, but the ALJ must build a logical bridge from the evidence to his conclusion. *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005). Minimally, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence.  *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ need not specifically address every piece of evidence in the record, but must present a "logical bridge" from the evidence to his conclusions.  *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010).

B.    **Issues for Review**

Boldt presents a quartet of issues for review.  Boldt contends that the ALJ (1) made an erroneous Step Four determination because Boldt could not return to his past relevant work, (2) failed to logically connected Boldt's headaches to the RFC, (3) improperly weighed the opinion evidence of neurologist Dr. Toth-Russell and ophthalmologist Dr. Bartlett, and (4) made an improper credibility determination of Boldt's subjective symptoms.  Before addressing Boldt's

challenge to the ALJ's Step Four determination about past relevant work, the Court will address

Boldt's RFC-related arguments.

### 1. RFC-Related Arguments

An individual's RFC demonstrates her ability to do physical and mental work activities

on a sustained basis despite functional limitations caused by any medically determinable

impairment(s) and their symptoms, including pain. 20 C.F.R. § 404.1545; SSR 96-8p 1996. In

making a proper RFC determination, the ALJ must consider all of the relevant evidence in the

case record. 20 C.F.R. § 404.1545. The record may include medical signs, diagnostic findings,

the claimant's statements about the severity and limitations of symptoms, statements and other

information provided by treating or examining physicians and psychologists, third party witness

reports, and any other relevant evidence. SSR 96-7p. "Careful consideration must be given to

any available information about symptoms because subjective descriptions may indicate more

severe limitations or restrictions than can be shown by objective medical evidence alone." SSR

96-8p. However, it is the claimant's responsibility to provide medical evidence showing how her

impairments affect her functioning. 20 C.F.R. § 416.912(c). Therefore, when the record does

not support specific physical or mental limitations on a claimant's work related activity, the ALJ

must find that the claimant has no related functional limitations. *See* SSR 96-8p.

### a. Logical Bridge from Headache Evidence to RFC

First, Boldt challenges the ALJ's RFC determination based on his contention that the ALJ

did not build a logical bridge from the evidence of Boldt's headaches to the RFC. This Court

does not agree. The ALJ need not specifically address every piece of evidence in the record, but

must present a "logical bridge" from the evidence to his conclusions. *O'Connor-Spinner*, 627

F.3d at 618. Nevertheless, an ALJ's analysis of evidence related to migraines, like any other

evidence in the record, must be logically connected to his RFC determination.  *See Moon v. Colvin*, 763 F.3d 718, 719 (7th Cir. 2014).  However, a claimant must do more to establish a disabling impairment than merely show its presence.  *See Estok v. Abfel*, 152 F.3d 636, 640 (7th Cir. 1998).

Here, Boldt argues that the interrogatory responses from medical expert and ophthalmologist Dr. Greenberg, upon which the ALJ relied, mistakenly failed to consider Boldt's headaches.  Dr. Greenberg responded to the ALJ's medical interrogatories, which sought opinion evidence regarding Boldt's work-related abilities, after Boldt's hearing.

After reviewing Boldt's medical record, Dr. Greenberg opined that Boldt would be restricted to work involving no dangerous machinery, heights, or commercial driving because of his impairments.  Dr. Greenberg's interrogatory responses expressly identified Boldt's impairments as 1) status post severe right eye trauma and surgical repair, 2) photophobia, 3) headaches related to photophobia, and 4) minor cataract changes in left eye.  Dr. Greenberg further acknowledged that Boldt's headaches could be associated with photophobia but could not state conclusively that Boldt's photophobia would cause the severity of headaches alleged by Boldt.  As a result, Dr. Greenberg suggested that Boldt consult a neurologist to evaluate his headaches further.  Thus, Dr. Greenberg's responses, upon which the ALJ relied, explicitly did consider Boldt's headaches despite Boldt's contention to the contrary.  In addition, the ALJ explained Dr. Greenberg's findings, cited to Dr. Greenberg's report numerous times, and relied upon Dr. Greenberg's opinion in defining the work-related limitations in Boldt's RFC.

The ALJ only enhanced the requisite "logical bridge" by noting Boldt's subsequent visit to neurologist Dr. Toth-Russell in early January 2013, nearly seven months after Boldt's last insured date, for evaluation of his headaches.  The ALJ also noted Dr. Toth-Russell's

7

prescription of Magnesium to treat Boldt's headaches. The ALJ specifically explained that he had considered Dr. Toth-Russell's report in determining Boldt's RFC even though the report had only been issued recently. The ALJ supported his RFC citing Dr. Toth-Russell's report and her prescribed conservative treatment plan for Boldt's headaches as evidence that his headaches were not as limiting as he had alleged.

In sum, it is one thing for a claimant to establish an impairment; however, it is quite another for a claimant to show that an impairment has caused disabling limitations within the relevant period as was Boldt's burden here. Based on the evidence in the record, the ALJ found that Boldt's headaches were an impairment but that they did not cause disabling limitations within the relevant period. The ALJ relied on Dr. Greenberg's opinion as to Boldt's limitations due to his impairments, which included his headaches. And despite the recency of Dr. Toth-Russell's report regarding Boldt's headaches, the ALJ favorably considered her diagnosis in articulating the rationale for Boldt's RFC. Thus, the ALJ properly built a sufficient logical bridge from the evidence regarding Boldt's headaches to the RFC. Moreover, Boldt has not provided any medical evidence to show that his headaches caused greater limitations during the relevant period than those incorporated in the RFC.

### b. Opinion Evidence

Second, Boldt challenges the ALJ's RFC determination alleging that the ALJ improperly evaluated the opinion evidence of alleged treating physicians Dr. Toth-Russell, neurologist, and Dr. Bartlett, optometrist, both of whom Boldt visited for the first time in January 2013. Boldt specifically argues that (1) the December 2012 MRI results that Dr. Toth-Russell inconclusively evaluated linked to Boldt's headaches, which he alleged were occurring before his last insured date of June 30, 2012; and (2) the ALJ should have asked a medical professional to review the

December 2012 MRI results, which could have been new and potentially decisive medical evidence regarding the worsening of Boldt's headaches over time. The Court rejects both arguments.

Boldt's arguments are premised on the fact that a treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and is not inconsistent with other substantial evidence in the record. *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000); *see also* 20 C.F.R. § 404.1527(d)(2); SSR 96-2p. In assessing the weight given to a particular medical opinion, the ALJ must consider whether a physician is a treating or examining physician; the length, nature, and extent of the treatment relationship; the physician's specialty; and the consistency and supportability of the physician's opinion. *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996); *see also* 20 C.F.R. § 404.1527(a)–(d).

Yet here, the record does not establish that Toth-Russell or Bartlett were treating sources. A treating source is a claimant's own medical source who provides medical treatment or evaluation and has, or has had, an ongoing treatment relationship with the claimant. 20 C.F.R. § 404.1502. Toth-Russell and Bartlett examined Boldt only once before the date of the ALJ's decision. Doctors who examine patients only once do not have an ongoing relationship with the patient and are therefore nontreating medical sources. *White v. Barnhart*, 415 F.3d 654, 658 (7th Cir. 2005). Therefore, neither Toth-Russell nor Bartlett had an ongoing relationship with Boldt at the time of the ALJ's decision and are not treating sources. Boldt invites the Court to reach a different conclusion arguing that the medical evidence shows the beginnings of an ongoing relationship with both doctors. This is a leap the Court cannot make based on the nature of Boldt's relationship with Toth-Russell and Bartlett at the time of the ALJ's decision.

As a result, the Court must determine whether the ALJ gave proper weight to Toth-Russell's and Bartlett's opinions in their capacities as nontreating medical sources. The ALJ is not required to assign a nontreating source opinion controlling weight and is permitted to evaluate the opinion's weight in light of other regulatory factors. *See Simila v. Astrue*, 573 F.3d 503, 514 (7th Cir. 2009); *see also* 20 C.F.R. § 404.1527(c)(1)–(6). These other factors include the claimant's examining and treatment relationship with the source of the opinion; the physician's specialty; the support provided for the medical opinion; its consistency with the record as a whole; and any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(1)-(6); *see also Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010). If the ALJ discounts a physician's opinion after considering these factors, that decision must stand so long as the ALJ " 'minimally articulate[d]' " his reasons—a very deferential standard that [has been] deemed "lax." *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008) (quoting *Rice v. Barnhart*, 384 F.3d 363, 372 (7th Cir. 2004)).

First, as to Dr. Toth-Russell's opinion, the ALJ properly weighed her opinion according to the regulatory factors. The ALJ explained the treatment relationship between Boldt and Dr. Toth-Russell in his opinion when he referenced the date of her report and alluded to her recent examination of Boldt. The ALJ addressed Dr. Toth-Russell's specialty when he referred to her as a neurologist, explained that the MRI she conducted was of the brain, stated the treatment was for headaches, and described her as doctor throughout the decision. The ALJ also discussed any inconsistency between Dr. Toth-Russell's opinion and the medical record when he noted a possible source of Boldt's headaches other than photophobia as compared to Dr. Toth-Russell's decision to recommend only a conservative Magnesium treatment.

The ALJ also focused on the recency of Dr. Toth-Russell's report, dated January 7, 2013, more than two months after the hearing and nearly seven months after Boldt's date last insured. The ALJ pointed to the recency aspect as a basis for why the headaches were not a "disabling" impairment. This is important because Boldt's date last insured for disability was June 30, 2012. Moreover, the ALJ could not explain his consideration of Dr. Toth-Russell's opinion of Boldt's limitations because she never offered any. She only offered her diagnosis for the headaches and began the conservative Magnesium treatment. Accordingly, the ALJ weighed Dr. Toth-Russell's opinion according to the regulatory factors for a nontreating source opinion.

Second, as to Dr. Bartlett's opinion, the ALJ made no mention of the weight he gave Dr. Bartlett's opinion in the decision. An ALJ is not required to follow a nontreating source opinion, but cannot ignore it and must explain the weight given to it in his decision. *See* 20 C.F.R. § 404.1527(b); SSR 96-6. The ALJ's failure to mention Dr. Bartlett's opinion is therefore error. Error, however, may be harmless. Courts will not remand cases to an ALJ for further proceedings when convinced that the ALJ will reach the same result. *See McKinzey v. Astrue*, 641 F.3d 884, 891-892 (7th Cir. 2011). In such a case, remand would be a waste of time and resources for both the Commissioner and the claimant. *Id.*

Here, review of the record convinces this Court that no reasonable ALJ would reach a contrary decision on remand even if Dr. Bartlett's opinion was considered. Boldt saw Dr. Bartlett for the first time nearly two-and-a-half months after the hearing and nearly seven months after Boldt's date last insured. Dr. Bartlett's report was submitted to the ALJ a little over a week before the ALJ's decision. As of the date of the ALJ's decision, the record showed Boldt was examined by Dr. Bartlett only once and Dr. Bartlett's initial examination was consistent with the other medical evidence in the record. Dr. Bartlett's exam generally confirmed the ALJ's finding

11

of a diminishing visual capacity in Boldt's left eye. Most notably, nothing in Dr. Bartlett's report pertained to Boldt's condition during the period prior to his last insured date.

Furthermore, Dr. Bartlett's opinion that Boldt's limited field of view would be a liability in most work environments reaches a conclusion on an issue reserved to the Commissioner. By regulation, an ALJ will not give any special significance to the source of an opinion on issues reserved to the Commissioner such as the RFC or the application of vocational factors. *See* 404.1527(d)(1)–(3). Dr. Bartlett's opinion amounts to a dispositive administrative finding regarding Boldt's RFC that the ALJ is not compelled to give any special significance.

In sum, even if Dr. Bartlett's opinion was relevant to the disability period, it was immaterial to the outcome and the ALJ's error in not considering this evidence was harmless. Thus, the ALJ did not commit reversible error in weighing the opinion evidence offered by either Dr. Toth-Russell or Dr. Bartlett.

Boldt has also failed to persuade the Court that the December 2012 MRI constituted new and material evidence that would create a link to limitations during the insured period as a result of Boldt's headaches. Under sentence six of 42 U.S.C. § 405(g), remand is proper if a claimant can show that "there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997) (quoting 42 U.S.C. § 405(g)). Evidence is "new" if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Id.* New evidence is "material" if there is a "reasonable probability" that the ALJ would have reached a different conclusion had the evidence been considered. *Johnson v. Apfel*, 191 F.3d 770, 776 (7th Cir. 1999). Thus, new evidence is material only if it is relevant to the claimant's

condition "during the relevant time period encompassed by the disability application under review." *Kapusta v. Sullivan*, 900 F.2d 94, 97 (7th Cir. 1990).

Both Dr. Toth-Russell's and Dr. Bartlett's January 2013 examinations and opinions, as well as the December 2012 MRI results, would likely be considered "new" evidence because they were not in existence at the time of the administrative hearing. More importantly, however, they are immaterial because neither pertained to Boldt's condition during the relevant insured period. Moreover, neither Dr. Toth-Russell nor Dr. Bartlett gave a retroactive opinion that would link Boldt's symptoms in January 2013 to earlier headaches. Thus, the ALJ was not obligated to consider the December 2012 and January 2013 medical evidence.

### c. Credibility Determination

Third, Boldt challenges the ALJ's RFC determination alleging that the ALJ improperly evaluated the credibility of Boldt's subjective symptoms. In assessing a claimant's subjective symptoms, particularly pain, the ALJ must follow a two-step process. SSR 96-7p. First, the ALJ must determine whether there is a medically determinable impairment that can be shown by acceptable medical evidence and can be reasonably expected to produce the claimant's pain or other symptoms. *Id*. Second, after showing an underlying physical or mental impairment that could reasonably be expected to produce the claimant's pain or other symptoms, the ALJ must evaluate the intensity, persistence, and limiting effects of the impairment to determine the extent to which the symptoms limit the claimant's ability to work. *Id*.

Whenever a claimant's statements about the symptoms and limitations of his impairment are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. *Id*. The ALJ may not discredit a claimant's testimony about her pain and limitations solely because

there is no objective medical evidence supporting it. *Carradine v. Barnhart,* 360 F.3d 751, 753 (7th Cir. 2004). Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary or the Secretary's designate, the ALJ. *Herr v. Sullivan*, 912, F.2d 178, 181 (7th Cir. 1990).

Although a claimant for social security disability benefits can establish the severity of his symptoms by his own testimony, his subjective complaints need not be accepted insofar as they clash with other, objective medical evidence in the record. *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007). An ALJ is free to discount an applicant's testimony on the basis of other evidence in the record. *Johnson v. Barnhart,* 449 F.3d 804, 804 (7th Cir. 2006). Because an ALJ is in a special position to hear, see, and assess witnesses, her credibility determinations are given special deference and will only be overturned if they are patently wrong. *Shideler v. Astrue*, No. 11-3284, 2012 WL 2948539, at *4 (7th Cir. July 20, 2012). An ALJ's credibility determination will only be considered patently wrong when it lacks any explanation or support. *Elder v. Astrue*, 529 F.3d 408, 413–14 (7th Cir. 2008).

Here, in determining the credibility of Boldt's testimony regarding the symptoms associated with his headaches, the ALJ concluded that his medically determined impairments could reasonably be expected to cause the symptoms he alleged in his testimony. However, the ALJ found that Boldt's "statements concerning the intensity, persistence, and limiting effects of these symptoms [were] not entirely credible to the reasons explained in this decision." Doc. No. 9 at 19.

The ALJ found Boldt's testimony that he would have headaches that sometimes last all day requiring him to lay in his room all day in the dark for relief not entirely credible. The ALJ justified his credibility finding by listing other evidence in the record that conflicted with Boldt's

allegations. First, the ALJ noted that the AOA ophthalmologist in August 2011expressly opined

that Boldt had a "full" visual field in his left eye, and "can see to work with his left eye." *Id.* at

20. Second, the ALJ relied again upon the recency of Dr. Toth-Russell's exam and treatment for

Boldt's headaches. Third, the ALJ emphasized again that Dr. Toth-Russell inconclusively found

a potential cause of Boldt's headaches in the December 2012 MRI but only treated his symptoms

conservatively without any prescription pain medicine. The ALJ even noted Boldt's own

testimony that he was not taking any prescription medications during the relevant insured period.

Fourth, the ALJ reiterated the evidence in Dr. Greenberg's responses to the medical

interrogatories, explaining that Dr. Greenberg had reviewed all of the record evidence including

the audio of Boldt's testimony at the hearing. As such, the ALJ accepted Dr. Greenberg's

opinion about Boldt's functional limitations related to dangerous machinery, heights, and

commercial driving.

In sum, the AOA report, the recency and conservative nature of Dr. Toth-Russell's

treatment, and Dr. Greenberg's opinion are all in stark contrast to the subjective limitations

alleged by Boldt during the relevant period. The ALJ was free to discount Boldt's testimony on

that basis. Therefore, the ALJ properly supported his credibility determination with substantial

evidence such that it was not patently wrong.

### 2.     Step Four Past Relevant Work Analysis

Lastly, Boldt challenges the ALJ's Step Four finding. Based on Boldt's testimony as

well as the testimony of the vocational expert, the ALJ found that Boldt's past relevant work,

based on his work at a small bedding company where he engaged in sales and assisted with

loading and unloading trucks, matched two different DOT occupations—materials handler and

sales attendant. At the hearing, the VE responded to the ALJ's hypothetical, including a

limitation on depth perception, stating that Boldt could not perform in a materials handler

position, but could perform the job of sales attendant. Accordingly, the ALJ found that Boldt

was not disabled at Step Four because he could still work as a sales attendant despite the

limitations accounted for in his RFC. Boldt, however, contends that the ALJ erred in finding

Boldt could return to work as a sales attendant because his past relevant work constituted

composite work.

Under SSR 82-62, an ALJ must make the following specific findings of fact as to (1) the

claimant's RFC, (2) the physical and mental demands of the past occupation, and (3) whether the

claimant's RFC would permit his return to the past occupation when adjudicating the issue of

past relevant work at Step Four. Here, Boldt alleges that the ALJ failed to make adequate

findings on the second and third issues by failing to assess whether Boldt's previous job with the

bedding company a "composite job." Composite jobs have significant elements of two or more

occupations and, as such, have no counterpart in the DOT. *See* SSR 82-61.

Admittedly, the ALJ's opinion includes no discussion of the demands of Boldt's job at

the bedding company or whether it constituted a composite job. However, past relevant work is

a term that "refers to the type of job, not to idiosyncratic duties that the employer may have

imposed." *Hughes v. Astrue*, 705 F.3d 276, 279 (7th Cir. 2013) (citing 20 C.F.R.

§ 404.1560(b)(2)). At Step Four, the ALJ is not required to consider whether a claimant can

return to his specific past relevant job, but whether he can return to a job he held that exists at

other employers. *See Smith v. Barnhart*, 388 F.3d 251, 253 (7th Cir. 2004). "In other words, the

ALJ need not conclude that the claimant is capable of returning to the precise job he used to

have; it is enough that the claimant can perform jobs substantially like that one." *Getch v.*

*Astrue*, 539 F.3d 473, 482 (7th Cir. 2008)). As a result, a claimant will be found "not disabled"

when he retains the RFC to perform the actual functional demands and job duties of a particular

past relevant job or the functional demands and job duties of the occupation as generally required

by employers throughout the national economy.  SSR 82-61.

Here, the ALJ relied on the VE, who testified that Boldt's past job at the bedding

company including both an aspect of sales and an aspect of materials handling, identifying DOT

numbers for both occupations. The ALJ used these DOT occupations to reach his Step Four

conclusion.  Specifically, the ALJ found that Boldt retained the RFC to perform his past relevant

work as a sales attendant, as it is generally performed.  However, the ALJ also found that Boldt

did not retain the RFC to perform his past relevant work as a materials handler.  As a result, the

ALJ's finding suggests that Boldt cannot return to the precise sales job he once held at the

bedding company due to the loading requirements.  Nevertheless, the ALJ's Step Four

determination that Boldt is not disabled must be affirmed under *Smith*, *Getch*, and the

administrative guideposts because he retains the RFC to perform his previous work as a sales

attendant, which exists at other employers throughout the national economy.

Boldt's contention that his depth perception limitations prevent him from performing any

of his past relevant work because his past sales job constituted composite work is unpersuasive.

Boldt's case is not a situation where a previous job or jobs had no counterpart in the DOT.

Moreover, any potential Step Four error would be harmless in this situation.  If the Court were to

remand, finding fault with the ALJ's failure to articulate a composite job analysis, the ALJ's

disability analysis would proceed to Step Five.  At Step Five, the ALJ would have to determine

whether Boldt would be able to perform any other work, existing in significant numbers in the

national economy, given his RFC, age, education, and work experience.  *See* 20 C.F.R.

§§ 404.1512(g); 404.1520(g).  With the VE's testimony that Boldt could still perform work as a

sales attendant and that such jobs do exist nationally, the ALJ would be forced to reach the same

conclusion that Boldt is not disabled and not entitled to disability benefits. Therefore, any Step

Four error that may exist is harmless and does not warrant remand.

## III. CONCLUSION

For the reasons discussed above, this Court concludes that the ALJ's disability

determination related to Boldt's DIB application is supported by substantial evidence. Thus, this

Court **AFFIRMS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g).

The Clerk is instructed to term the case and enter judgment in favor of the Commissioner.

**SO ORDERED.**

Dated this 12th Day of August, 2015.


S/Christopher A. Nuechterlein
Christopher A. Nuechterlein
United States Magistrate Judge